HOWARD et al., Appellants,

v.

CHATTAHOOCHIE'S BAR et al., Appellees.

[Cite as *Howard v. Chattahoochie's Bar,* 175 Ohio App.3d 578, 2008-Ohio-742.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–07–27.

Decided Feb. 25, 2008.

Ronald A. Apelt, for appellants.

John P. Petro and Lorree L. Dendis, for appellee Chattahoochie's Bar.

ROGERS, Judge.

{¶ 1} Plaintiff-appellant, Brian K. Howard, administrator of the estate of Duriel Howard, appeals the judgment of the Marion County Court of Common Pleas, granting summary judgment in favor of defendant-appellee Chattahoo-

chie's Bar. On appeal, Howard asserts that the trial court erred in finding that there were no genuine issues of material fact and that Chattahoochie's was entitled to judgment as a matter of law. Based upon the following, we affirm the judgment of the trial court.

{¶ 2} The following general facts are undisputed. On January 20, 2002, Duriel, Howard's 20–year–old brother, attended "teen night" at Chattahoochie's in Marion. Sometime after teen night ended and the patrons left Chattahoochie's, multiple assailants in a parking lot off of Chattahoochie's premises severely beat Duriel, who eventually died from his injuries.

{¶ 3} In April 2004, Jason Oldaker was deposed and stated that on January 20, 2002, he was working as a disc jockey during Chattahoochie's teen night; that he never had any indication that an altercation was going to take place; that ten to 15 minutes after closing time, "[someone] was just hollering for help outside," and he went outside to assess the situation; that an altercation was taking place by some railroad tracks in an area that was not used by customers of Chattahoochie's; and that Chattahoochie's had no previous problems with fighting on teen night to his knowledge.

{¶ 4} In September 2004, Kenneth Smith was deposed and stated that on January 20, 2002, he was employed by Chattahoochie's and that Tim Nesako,[1] Chattahoochie's owner, requested that he keep an eye on the bar to "[make] sure no trouble happened inside the place"; that it was teen night at Chattahoochie's and it was protocol that only teenagers between the ages of 13 and 18 be admitted; that teen nights were only on Sundays; that the crowd that evening was "late arriving," with approximately half the patrons arriving after 9:00 or 9:30; that at closing time, there was nothing unusual about the way the patrons departed except that "there was [sic] a few of them that was [sic] a little rowdy at the end of the night"; that many of the teens were on their cell phones towards closing time, but this behavior was not unusual because they typically called for rides home; that he did not recall any type of confrontation or altercation taking place in the bar before closing time; that he became aware that there was an altercation outside after closing time when Rob Graber, the bartender, came back into the bar and told Nesako to call 9–1–1; that Nesako called 9–1–1 and then, several minutes later, Smith went outside, and the altercation had ended; that he believed the altercation had taken place in an alley by some railroad tracks where there is a small parking area; that on Friday and Saturday nights, he has seen Chattahoochie's patrons park in that area; that Graber informed him that "someone pulled a knife on him"; and that he had no recollection of any other

---

1. We note that Tim Nesako's last name is spelled three different ways in the record before this court; however, we will use the spelling provided in Smith's and Ruth's depositions.

incidents during which the police were called to Chattahoochie's in response to any altercations on or off the premises.

{¶ 5} Subsequently, Jon Ruth was deposed and stated that on January 20, 2002, he was employed by Chattahoochie's to take admission from teen-night patrons; that prior to closing time, he had no indication that an altercation was about to occur because "everybody seemed to be having fun"; that many of the teens were on their cell phones towards closing time, but this situation was not unusual because they were "probably calling their mother[s]"; that he first discovered there was an altercation when "after everybody left the bar * * * [Graber] was locking the door and then somebody yelled fight and out the door he went"; that Oldaker informed him that "some guy pulled a knife," and the altercation was in the parking lot across the street from Chattahoochie's; and that he could not recall any previous problems with fights on teen nights.

{¶ 6} In November 2005, Howard filed a complaint against Chattahoochie's, alleging that Chattahoochie's was negligent in failing to take proper security measures to prevent the assault and in allowing a hazardous environment to exist within its premises, conduct that let to the altercation that took place outside its premises.[2]

{¶ 7} In January 2007, Chattahoochie's moved for summary judgment, asserting that Howard had set forth no allegation or evidence that the altercation took place within Chattahoochie's or on property owned or controlled by Chattahoochie's. Additionally, Chattahoochie's attached an affidavit from Michael B. Cerny, a shareholder in Chattahoochie's and owner of the property on which it was located, which provided that the parking lot where Duriel was assaulted was not owned, rented, or controlled by Chattahoochie's and that bar patrons were not to park in the parking lot because Chattahoochie's did not own or rent the lot.

{¶ 8} In February 2007, the trial court granted Chattahoochie's motion for summary judgment and dismissed Howard's complaint against Chattahoochie's, stating from the bench:

From the materials that were supplied [Oldacker's, Ruth's, and Smith's depositions and Cerny's affidavit], there is no question that the incident of the assault on Duriel Howard did not occur on the premises of Chattahoochie's Bar, but rather—it's not exactly clear based on the materials supplied where it occurred; one of two places apparently.

---

2. Initially, the plaintiffs included Brian K. Howard, as administrator of the estate of Duriel Howard, Robert Howard, and Doralene Howard, and the defendants included Jose Valdez, Jr., Jose Valdez Sr., Jordan Oliver, Palethia Oliver, Barb Jones, Kyle Franklin, Rex Franklin, Marshall Starks, Marshall B. Starks, Christopher Morgan, Joseph Morgan, John Doe, John Doe Corporation, and Chattahoochie's. However, Brian K. Howard, as administrator of the estate of Duriel Howard, and Chattahoochie's are the only parties to this appeal.

\* \* \*

Court notes on the materials submitted in this case there is no evidence that Chattahoochie's Bar ever assumed any control of the parking lots.

\* \* \*

There is no evidence in the case before this Court that there has been any assumption of security for any parking lots; and the Court further notes that there are no adjacent parking lots to Chattahoochie's Bar.

\* \* \*

[T]he Court notes the arguments of the Plaintiff that—that some inference should be drawn from the fact that there were a number of late arrivals to the Teen Night, and also from the fact that there were a number of people talking on cell phones.

Court fails to see—even construing the evidence most strongly in favor of the Plaintiff—that that would—would make for a reasonable belief that there was going to be a serious incident of assault that was going to occur as a result. That is only mere speculation. There's certainly plenty other more probable reasons explaining why those things were going on.

For instance, as far as the cell phones, the teenagers are 13 to 18 years old. Most of them are not driving. So they may be calling for rides[.] \* \* \*

As far as the late arrivals, it really doesn't seem to indicate much of anything, I would think.

{¶ 9} It is from this judgment that Howard appeals, presenting the following assignment of error for our review.

The trial court erred in granting defendant's motion for summary judgment since genuine issues of material fact existed demonstrating that defendant breached its duty of care to plaintiff's decedent, Duriel Howard, which directly and proximately caused his injuries, damages, and death.

{¶ 10} In his sole assignment of error, Howard contends that the trial court erred when it granted Chattahoochie's motion for summary judgment because there were genuine issues of material fact as to whether Chattahoochie's had breached its duty of care to Duriel. Specifically, Howard claims that Chattahoochie's should have been aware that there was a substantial risk to Duriel because the crowd at teen night was late-arriving, many of the teens were on their cell phones near closing time, and some of the teens were rowdy. Additionally, Howard claims that Chattahoochie's breached its duty of care to Duriel by admitting him to teen night even though he was 20 years old. We disagree.

{¶ 11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct

judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, at ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole, (1) no genuine issues of material fact remain to be litigated; (2) construing the evidence most strongly in favor of the nonmoving party, reasonable minds could only conclude in favor of the moving party; and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 12} The party moving for summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact. *State ex rel. Burnes v. Athens City Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260; see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.

{¶ 13} It is well settled that the elements of a negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury " 'resulting proximately therefrom.' " *Nationwide Mut. Ins. Co. v. Am. Heritage Homes Corp.*, 167 Ohio App.3d 99, 2006-Ohio-2789, 853 N.E.2d 1219, ¶ 12, quoting *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. " 'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.' " Id., quoting *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23.

{¶ 14} Although Howard's argument focuses on Chattahoochie's purported breach of duty to Duriel, we must first determine whether a legal duty existed at the time of the assault.

{¶ 15} In applying the element of duty to business owners and invitees,[3] the Supreme Court of Ohio has held, "A business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business

---

3. We note that the parties do not dispute that a business owner/invitee relationship existed between Chattahoochie's and Duriel while he was on the premises for teen night.

owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner"; however, "[t]he duty does not extend to premises not in the possession and control of the business owner." *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, syllabus; *Wireman v. Keneco Distribs., Inc.* (1996), 75 Ohio St.3d 103, 108, 661 N.E.2d 744. See also *Carr v. Brock* (June 5, 1989), 12th Dist. Nos. CA88–09–136 and CA88–09–39, 1989 WL 59022; *Williams v. Prospect Mini Mart*, 11th Dist. No. 2002–L–84, 2003-Ohio-2232, 2003 WL 21000932. In determining whether a business owner has control over a premises, the test is " 'the power and right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.' " *Simpson*, 73 Ohio St.3d at 132, 652 N.E.2d 702, quoting *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 188, 26 OBR 160, 497 N.E.2d 1118.

{¶ 16} In *Williams*, a convenience store patron was assaulted in a parking lot adjacent to the store, which was not owned or possessed by the store, but that some customers used as a means of ingress and egress. Finding that the store exercised no control over the parking lot, the court stated that although "[a] business owner has a duty to provide a reasonably safe ingress and egress for the benefit of its customers[,] * * * adjacent property that is not in the possession and control of the business owner is not an ingress and egress for the property." Id., 2003-Ohio-2232, 2003 WL 21000932, at ¶ 28–30, citing *Albright v. Univ. of Toledo* (Sept. 18, 2001), 10th Dist. No. 01AP–130, 2001 WL 1084461. See also *Carr*, 12th Dist. Nos. CA88–09–136 and CA88–09–39, 1989 WL 59022.

{¶ 17} Additionally, there is generally no duty to prevent a third party from harming another, absent some special relationship between the parties. *Simpson*, 73 Ohio St.3d at 133, 652 N.E.2d 702, citing *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449. In *Simpson*, a supermarket customer exited the store and was then assaulted in a parking lot adjacent to the store premises. The Supreme Court of Ohio held that the special relationship of business owner/invitee existed between the store and the customer while the customer was on the store premises. But once the customer left the store, the relationship ceased. Therefore, even if the assault had been foreseeable, the supermarket had no duty to prevent an assault of the customer once she left its premises. Id. at 134, 652 N.E.2d 702.

{¶ 18} Even where a business owner/invitee relationship is present, the existence of a duty requires that the harm be foreseeable. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142–143, 539 N.E.2d 614. "A foreseeable act is one that a reasonably prudent person should anticipate and, in the case of criminal acts perpetrated on invitees, foreseeability depends on the knowledge of the property owner." *Alexander v. The Pub, Inc.* (May 14, 1999), 3d Dist. No. 17–98–24, 1999

WL 378375, citing *McKee v. Gilg* (1994), 96 Ohio App.3d 764, 645 N.E.2d 1320. In determining foreseeability, the test is "'did previous experience on the premises create a duty to provide additional protection for business invitees?'" *Alexander*, quoting *Rush v. Lawson* (1990), 65 Ohio App.3d 817, 820, 585 N.E.2d 513.

{¶ 19} Here, Howard presented no evidence suggesting that Chattahoochie's owed a duty to Duriel. First, undisputed evidence was presented that at the time Duriel was assaulted, Chattahoochie's had closed, and its patrons had left the premises. Second, undisputed evidence was presented that the assault took place in a parking lot that was neither possessed nor controlled by Chattahoochie's. Therefore, under *Simpson* and *Williams*, we conclude that a business owner/invitee relationship did not exist between Chattahoochie's and Duriel at the time of the assault.

{¶ 20} Moreover, even if Howard had shown evidence of a business owner/invitee relationship between Chattahoochie's and Duriel at the time of the assault, he failed to present any evidence that the assault was foreseeable. Howard contends that the late-arriving crowd, cell phone use, rowdiness of the teens, and the admission of a 20–year–old made the assault foreseeable; however, as the trial court stated, there were many possible explanations for these occurrences, and any connection between them and the assault is merely speculative. Additionally, Howard presented no evidence showing that previous experiences at Chattahoochie's would have given its employees any reason to anticipate the assault. Because Howard failed to demonstrate that Chattahoochie's owed a duty to Duriel, we hold that the trial court did not err in granting Chattahoochie's motion for summary judgment.

{¶ 21} Accordingly, we overrule Howard's assignment of error.

{¶ 22} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and WILLAMOWSKI, J., concur.