[Cite as *Ryder v. McGlone's Rentals*, 2009-Ohio-2820.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

SHARON K. RYDER,                                    CASE NO. 3-09-02

   PLAINTIFF-APPELLANT,

 v.

McGLONE'S RENTALS, ET AL.,                          O P I N I O N

   DEFENDANTS-APPELLEES.

**Appeal from Crawford County Common Pleas Court**
**Trial Court No. 07CV0123**

**Judgment Affirmed**

**Date of Decision:  June 15, 2009**

APPEARANCES:

   *Brenda M. Johnson and Jonathan D. Mester* **for Appellant**

   *Kathryn M. Eyster and H. Frank McDaniel, Jr.* **for Appellees**

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Sharon Ryder, appeals the judgment of the Crawford County Court of Common Pleas granting summary judgment in favor of Defendant-Appellees, Paul and Barbara McGlone, d.b.a. McGlone's Rentals. On appeal, Ryder argues that the trial court erred in granting summary judgment in favor of the Defendant-Appellees because they were not entitled to judgment as a matter of law. Based upon the following, we affirm the judgment of the trial court.

{¶2} On April 24, 2006, Ryder exited her vehicle parked in the street in front of the house she rented from the McGlones located at 583 Rogers Street in Bucyrus, Crawford County ("the property"). While traversing the public sidewalk abutting the street in front of the property, Ryder tripped, fell, and was injured.

{¶3} In March 2007, Ryder filed a complaint against the McGlones, alleging that they negligently allowed a defective condition on the sidewalk outside of the property, and that the McGlones' negligence caused her permanent and severe injuries, incurrence of medical expenses, and extreme pain and suffering. Additionally, Ryder's complaint alleged that the McGlones violated the Landlord-Tenant Act under R.C. 5321.04(A) by failing to comply with the requirements of applicable housing, health, and safety codes; by failing to keep the premises of the property in a fit and habitable condition; and, by violating Bucyrus

Codified Ordinance §521.04 by failing to keep the sidewalks abutting the property in repair and free from nuisance.

{¶4} In May 2007, the McGlones answered, denying Ryder's allegations and asserting, among other defenses, that Ryder's negligence caused or contributed to her damages, and that Ryder assumed the risk of an open and obvious danger or condition.

{¶5} In April 2008, Ryder was deposed and stated that, in April 2006, she leased the bottom half of the two-unit property; that she moved into the property around December 2004 with her son, David Vreeland; that, on April 24, 2006, she parked her car in the street in front of the house; that she began to walk on the sidewalk toward the house, carrying a small box of groceries; that she fell on the sidewalk in front of the property because she tripped on a "lift" in the sidewalk (Ryder dep., p. 27); that she knew there was a lift in the sidewalk, but forgot where it was and believed she had already passed it before she fell; that the day was sunny and clear, and the sidewalk was not wet; that she had a clear view ahead and was not distracted when she fell; and, that Vreeland, her son, was standing on the porch and witnessed her fall.

{¶6} Ryder continued that she traversed the portion of the sidewalk where she fell approximately twice a week since she had moved to the property; that she was aware there was a lift in the sidewalk at the point where she fell; and, that, approximately seven months before she fell, she spoke to Barbara McGlone about

having Paul McGlone "do something" about the lift in the sidewalk. (Ryder Dep., p. 55).

{¶7} Thereafter, Kathleen Auck, Ryder's daughter, was deposed and stated that, before Ryder's fall, she spoke to Barbara McGlone about how people had tripped on the sidewalk in front of the property and complained to them, and how it needed to be repaired; that Barbara McGlone told her that she would give Paul McGlone the message; that she had talked to Ryder about the lift in the sidewalk, and Ryder had pointed it out to her before, telling her to be careful in that area; that she had tripped on the lift on a previous occasion while she was pushing Ryder in her wheelchair; and, that neither she nor Ryder spoke to the city about repairing the sidewalk prior to Ryder's fall because they did not know much about the laws in Bucyrus.

{¶8} Thereafter, David Vreeland, Ryder's son, was deposed and stated that he was living with Ryder at the property in April 2006; that the property contained two units, and another family lived in the second story unit of the home; that, on the day Ryder fell, he heard her car pull up to the property and saw her walk around to the trunk of her car and retrieve a box of groceries; that he observed Ryder trip over the "crack" in the sidewalk and fall (Vreeland dep., p. 17); that he did not know if anyone asked the McGlones to fix the sidewalk prior to Ryder's fall; that he mowed the grass at the property but did not mow around the area of the sidewalk where Ryder fell because he knew there was a "ledge" or

"major step up" (Vreeland dep., p. 21); that everyone in the family, including Auck and Ryder, knew that there was a ledge in the sidewalk; and, that the ledge was covered with grass at the time Ryder fell, but that Auck cleaned out the grass after Ryder's fall at the request of the McGlones' insurance company.

{¶9}   Paul McGlone was deposed and stated that he did not recall anyone requesting he conduct any maintenance at the property between October 2005 and April 2006 except for installing some electrical plugs, repairing the roof, and fixing the porch; that, prior to April 2006, he had seen the lift in the sidewalk, but did not realize how high the lift was because grass grew between the slabs and made the lift difficult to see; that he had not repaired the lift or contacted the city about repairing it; and, that he did not recall Ryder or any of her family members speaking to him about the problem with the sidewalk.

{¶10} In January 2009, the trial court granted summary judgment in the McGlones' favor, finding that Ryder had knowledge of the sidewalk defect; that there was no dispute that Ryder fell on a public sidewalk; that, as defined by R.C. 5321.01(C), a public sidewalk was not part of a common area under the McGlones' control; that for rental property to have a "common area," it must have more than one unit, and a single-family residence could not have common areas; and, that a sidewalk running parallel with and abutting the street in front of a home was open to anyone traversing it.   Based upon these findings, the trial court concluded that the Landlord-Tenant Act did not apply to the facts of the case.

Additionally, the trial court found that Ryder's claim must also fail because the sidewalk conditions were open and obvious as the condition was observable and was present for quite some time; that Ryder knew of the condition from prior experience, and, in fact, had warned her daughter about the situation; and, that, at the time she fell, Ryder had a clear view ahead and was not distracted by anything.

{¶11} It is from this judgment that Ryder appeals, presenting the following assignment of error for our review.

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS-APPELLEES PAUL MCGLONE AND BARBARA MCGLONE.**

{¶12} In her sole assignment of error, Ryder argues that the trial court erred in granting summary judgment in favor of the McGlones. Specifically, Ryder argues that a public sidewalk located on a multi-unit residential premises is a "common area" for purposes of R.C. 5321.04; that the McGlones, as landlords operating residential property, were required pursuant to R.C. 5321.04 and Bucyrus Codified Ordinance §521.04 to keep abutting public sidewalks in repair; and, that the "open and obvious" doctrine does not protect a landlord from liability for a breach of his statutory duties under R.C. 5321.04. We note that the issue of whether R.C. 5321.04 of the Landlord-Tenant Act applies to an injury occurring on a public sidewalk is an issue of first impression for this Court and, it appears, for Ohio.

*Standard of Review*

{¶13} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶14} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support its argument. Id.

at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; she may not rest on the mere allegations or denials of her pleadings. Id.; Civ.R. 56(E).

*Common Law and Statutory Negligence*

**{¶15}** Plaintiff-tenants seeking to establish negligence claims against defendant-landlords may do so under (1) common law premises liability, or (2) R.C. 5321 et seq., commonly referred to as the Landlord-Tenant Act. *Mounts v. Ravotti*, 7th Dist. No. 07 MA 182, 2008-Ohio-5045, ¶¶15-17.

**{¶16}** The elements of a negligence action between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury "'resulting proximately therefrom.'" *Howard v. Chattahoochie's Bar*, 175 Ohio App.3d 578, 2008-Ohio-742, ¶13, quoting *Nationwide Mut. Ins. Co. v. Am. Heritage Homes Corp.*, 167 Ohio App.3d 99, 2006-Ohio-2789, ¶12. Additionally, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573. A hazard is open and obvious when it is in plain view and readily discoverable upon ordinary inspection. *Mohn v. Wal-Mart Stores, Inc.*, 3d Dist. No. 6-08-12, 2008-Ohio-6184, ¶14, citing *Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 51. Further, a "'plaintiff's failure to avoid a known peril is not excused by the fact that he 'did not think,' or 'forgot'.'" *Sneary v.*

*McDonald's Restaurant No. 3830*, 3d Dist. No. 1-2000-13, 2000-Ohio-1885, quoting *Raflo v. Losantiville Country Club* (1973), 34 Ohio St.2d 1, 3.

{¶17} R.C. 5321 et seq. governs the obligations of a landlord and provides, in pertinent part:

> **(A)   A landlord who is a party to a rental agreement shall do all of the following:**
>
> **(1)   Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;**
>
> **(2)   Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;**
>
> **(3)   Keep all common areas of the premises in a safe and sanitary condition[.]**

R.C. 5321.04.  The Supreme Court of Ohio has held that "a landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2) constitutes negligence per se."  *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶23, citing *Sikora v. Wenzel*, 88 Ohio St.3d 493, 2000-Ohio-406.  Further, the Supreme Court of Ohio held in *Robinson* that "[t]he 'open and obvious' doctrine does not dissolve the statutory duty to repair," Id. at ¶25; however, "if the jury finds no statutory breach, * * * it still must determine whether the danger was open and obvious [to the plaintiff] under common-law negligence principles."  Id.

{¶18} Finally, Bucyrus Codified Ordinance §521.04 governs the duty to keep sidewalks in repair and clean, providing, in pertinent part:

**(a)     No owner or occupant of abutting lands shall fail to keep the sidewalks, curbs, or gutters in repair and free from snow, ice or any nuisance (ORC 723.011)**

**\* \* \***

**(c)     Whoever violates any provision of this section shall be fined not more than one hundred dollars ($100.00) a day.  Each day's continued violation shall constitute a separate offense. (Ord. 85-99.  Passed 11-2-99).**

*Assignment of Error*

{¶19} Ryder specifically contends that the trial court erred in failing to find that, pursuant to R.C. 5321.04(A)(1) and Bucyrus Codified Ordinance §521.04, the McGlones owed her a duty to keep the public sidewalk in repair and violated that duty; erred in determining that the sidewalk was in a "fit and habitable" condition pursuant to R.C. 5321.04(A)(2); and, erred in determining that the property was a single-family residence, and thus, the public sidewalk could not be a "common area" subject to R.C. 5321.04(A)(3).  Finally, Ryder claims that the trial court erred in applying the "open and obvious" doctrine to this case. Specifically, Ryder claims that the Supreme Court of Ohio has held that the open and obvious doctrine does not protect a landlord from liability pursuant to *Robinson*, supra.  We disagree with Ryder's assertion that the Landlord-Tenant Act is applicable to the facts before us.

{¶20} Where the meaning of a statute is ambiguous, a court may examine legislative history or examine the statute in pari materia in order to ascertain its

meaning. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶34; *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, paragraph two of the syllabus. Additionally, "'a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.'" *Jackson*, 2004-Ohio-3206, at ¶34, quoting *State v. Wilson* (1997), 77 Ohio St.3d 334, 336. Further, a court is permitted to consider laws concerning the same or similar subjects in order to discern legislative intent. R.C. 1.49(D). "'Statutes relating to the same matter or subject * * * are in pari materia and should be read together to ascertain and effectuate if possible the legislative intent.'" *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶20, quoting *Weygandt*, 164 Ohio St. 463, at paragraph two of the syllabus. Finally, "[i]t is a firm principle of statutory construction that liability imposed by statute shall not be extended beyond the clear import of the terms of the statute." *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 212, citing *Weiher v. Phillips* (1921), 103 Ohio St. 249, paragraph one of the syllabus.

{¶21} We find that the Landlord-Tenant Act as a whole is inapplicable to the facts of this case because Ryder was not injured on the residential premises, but on a public sidewalk. As used in R.C. 5321.04 of the Landlord-Tenant Act, under which Ryder seeks relief, the Revised Code defines "landlord" as "the owner, lessor, or sublessor of residential premises * * *"; defines "tenant" as "a person entitled under a rental agreement to the use and occupancy of residential

premises to the exclusion of others"; and, defines "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant. * * *" R.C. 5321.01(A), (B), (C). The definition of "residential premises" does not include a reference to public sidewalks abutting the property. Accordingly, we find that a public sidewalk does not fall within the definition of "residential premises," particularly when read in pari materia with the definition of "tenant," which is defined as a person entitled to use and occupy the residential premises *to the exclusion of others*. Clearly, the public sidewalk is not for the tenant's use to the exclusion of others, as it is open for use to the public. Thus, as Ryder's injuries occurred on the public sidewalk, she may not seek redress under R.C. 5321.04 of the Landlord-Tenant Act.

{¶22} Next, we address Ryder's argument that the open and obvious doctrine does not protect a landlord from liability. In *Robinson*, supra, the Supreme Court of Ohio held that:

> **The "open and obvious" doctrine does not dissolve the statutory duty to repair. If the jury finds that [Defendant-Landlord] breached her duty to repair and keep the leased premises in a fit and habitable condition, the "open and obvious" doctrine will not protect her from liability. If the jury finds no statutory breach, however, it still must determine whether the danger was open and obvious to [Plaintiff-Tenant] under common-law negligence principles.**

(Citation omitted.) 2006-Ohio-6362, at ¶25. Therefore, the open and obvious doctrine will not relieve a defendant-landlord of liability for violations of R.C. 5321.04; however, where the plaintiff-tenant has established no statutory breach under R.C. 5321.04, the open and obvious doctrine must still be considered. Here, as Ryder has not demonstrated a duty under R.C. 5321.04 because she was not injured on the residential premises, but on the public sidewalk, the trial court did not err in considering the open and obvious doctrine and finding that it barred her claims.

{¶23} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jnc**