[Cite as *Waikem v. Cleveland Clinic Found.*, 2012-Ohio-5620.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GEORGE E. WAIKEM, JR., et al. | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiffs-Appellants | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 2011 CA 00234 |
| THE CLEVELAND CLINIC<br>FOUNDATION, et al. | |
| Defendants-Appellees | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2011 CV 00420 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 30, 2012 |

APPEARANCES:

For Plaintiffs-Appellants

LEE E. PLAKAS
MEGAN J. FRANTZ
TZANGAS, PLAKAS, MANNOS
AND RAIES, LTD.
220 Market Avenue South, 8th Floor
Canton, Ohio 44702

For Defendants-Appellees

WILLIAM A. MEADOWS
W. BRADFORD LONGBRAKE
REMINGER CO., LPA
80 South Summit Street
200 Courtyard Square
Akron, Ohio 44308

*Wise, J.*

{¶1} Plaintiffs-Appellants George E. Waikem, Jr. and Cynthia Waikem appeal the September 21, 2011, decision of the Stark County Court of Common Pleas granting summary judgment in favor of Appellees Khalid M. Abbed, M.D., Raymond G. Borkowski, M.D., Isador H. Lieberman, M.D., Ryan P. Huffman, M.D., Micah A. Jacobs, M.D., Thomas S. Keys, M.D., Steven K. Schmitt, M.D., Ali Jahan, M.D. and The Cleveland Clinic Foundation.

## STATEMENT OF THE FACTS AND CASE

{¶2} The relevant facts are as follows:

{¶3} On September 5, 2006, Appellant George Waikem, Jr. underwent spinal surgery at the Cleveland Clinic. Post-operatively, Appellant suffered complications including fibrillation (abnormal heart rhythm), diaphoresis (excessive sweating associated with shock), acute tubular necrosis (kidney injury), hepatic insufficiency (inadequate liver function), thrombocytopenia (abnormally low blood platelets), acute renal failure (kidney failure), tachypnea (rapid breathing), and hypoxemia (low blood oxygen pressure). After a complicated post-operative recovery, Appellant was discharged from the hospital on September 28, 2006.

{¶4} On October 10, 2006, Appellant was re-admitted to the Cleveland Clinic for treatment of an infection at the surgical site. He was discharged on October 24, 2006.

{¶5} Upon being released from the hospital, Appellant was given a Discharge Summary relating to his surgery and hospitalization.

{¶6} In October, 2007, Appellant, through counsel, requested his medical records relating to the September 5, 2006, surgery and the October 10, 2006, re-hospitalization.

{¶7} On October 5, 2009, Appellants George and Cynthia Waikem filed a lawsuit naming the Cleveland Clinic, Dr. Raymond Borkowski, Dr. Khalid Abbed, Dr. Isador Lieberman and Dr. Ryan Huffman for purported medical malpractice arising out of the September 5, 2006, surgery, and the subsequent October 10, 2006, hospitalization relating to a surgical site infection.

{¶8} On February 3, 2010, Appellants dismissed their initial lawsuit pursuant to Civ.R. 41(A).

{¶9} On February 3, 2011, Appellants re-filed the lawsuit against the original defendants and further named four additional physician defendants, including Dr. Micah Jacobs, Dr. Thomas Keys, Dr. Stephen Schmitt and Dr. Ali Jahan.

{¶10} The new lawsuit also included an additional basis of negligence for failure to timely diagnose and treat Appellant's MRSA infection.

{¶11} Appellees filed separate motions for summary judgment arguing expiration of the statute of limitations. Appellants opposed the motions.

{¶12} By Judgment Entry filed September 21, 2011, the trial court granted the motions for summary judgment. In said Entry, the trial court found:

{¶13} "… the cognizable event triggering the statute of limitations in this matter occurred on October 10, 2006. Accordingly, to be timely under the "discovery rule," the plaintiffs' claims were to be filed on or before (or a 180-day extension letter served) on or before October 10, 2007. Since the 180-day letters in the original filing of this matter

were not sent until April 7, 2009, any claims against the doctors will be barred by the statute of limitations unless such claims were timely filed using the "termination rule".

{¶14} The trial court then went on to review the termination rule as it applied to each individual doctor and found all such claims were barred by the statute of limitations.

{¶15} The trial court further found that all claims against the Cleveland Clinic Foundation sounded in vicarious liability for the alleged malpractice of the individual defendant doctors, and having found that the defendant doctors could not be held liable for any alleged malpractice as the statute of limitations and/or repose had expired, the trial court likewise found that CCF could not "be held liable on a *respondeat superior* and/or vicarious liability basis."  The trial court cited *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559 and *Natl. Union Fire Ins. Co. of Pittsburgh v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601 in support of its findings.

{¶16} Plaintiffs-Appellants now appeal, raising the following Assignments of Error:

## ASSIGNMENTS OF ERROR

{¶17} "I. ASSUMING ARGUENDO THE STATUE [SIC] OF LIMITATIONS EXPIRED AGAINST ALL APPELLEE EMPLOYEE DOCTORS, APPELLANTS STILL HAVE A VIABLE CLAIM AGAINST APPELLEE CLEVELAND CLINIC BECAUSE APPELLANTS TIMELY FILED THEIR RESPONDEAT SUPERIOR CLAIM.

{¶18} "II. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHEN THE COGNIZABLE EVENT REGARDING APPELLEES DR. ABBED, DR. BORKOWSKI, DR. LIEBERMAN, AND DR. HUFFMAN OCCURRED; GEORGE

WAIKEM DID NOT HAVE ANY REASON TO SUSPECT HIS INJURIES WERE RELATED TO A SPECIFIC PROFESSIONAL SERVICE UNTIL HE READ HIS MEDICAL RECORDS THAT REVEALED THAT THE APPELLEES INACCURATELY CLAIMED THAT THEY WERE NOT AWARE THAT MR. WAIKEM WAS ON STEROIDS PRIOR TO SURGERY.

**{¶19}** "III. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO THE (SIC) WHEN THE COGNIZABLE EVENT REGARDING APPELLEES DR. MICAH JACOBS, DR. THOMAS KEYS, DR. STEPHEN SCHMITT, AND DR. ALI JAHAN OCCURRED; GEORGE WAIKEM WAS NOT AWARE THAT HIS INFECTION WAS RELATED TO THE MEDICAL CARE HE RECEIVED AT CLEVELAND CLINIC UNTIL HE RECEIVED EXPERT DR. DREYER'S OPINION.

Standard of Review

**{¶20}** This matter comes to us on appeal from the trial court's decision to grant summary judgment in favor of Appellees. Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 1996-Ohio-211:

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

**{¶21}** As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35. Accordingly, our review is de novo and we will not reverse an otherwise correct judgment merely because the trial court utilized different or erroneous reasons as the basis for its determination. *Howard v. Chattahoochie's Bar*, 175 Ohio App.3d 578, 2008-Ohio-742, ¶ 11.

**{¶22}** For ease of discussion, we shall address Appellants' Assignments of Error out of order.

## II.

**{¶23}** In their Second Assignment of Error, Appellants argue that the trial court erred in finding that Appellants' claims against Drs. Abbed, Borkowski, Lieberman and Huffman were time-barred. We disagree.

**{¶24}** R.C. §2305.113 provides, in relevant part:

**{¶25}** (A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

**{¶26}** (B)(1) If prior to the expiration of the one-year period specified in division (A) of this section, a claimant who allegedly possesses a medical, dental, optometric, or

chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.

{¶27} Further, the Ohio Supreme Court has observed:

[A] cause of action for medical malpractice accrues and the one year statute of limitation commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later. *Frysinger v. Leech,* 32 Ohio St.3d 38, 41–42, 512 N.E.2d 337 (1987).

{¶28} Under the discovery rule, a "cognizable event" triggers the running of the statutory time for bringing suit. A "cognizable event" is "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." *Allenius v. Thomas,* 42 Ohio St.3d 131, 134, 538 N.E.2d 93 (1989). Hence, if a patient believes that her physician has done something that has caused her harm, such a fact is enough to alert her to the necessity for investigation for purposes of pursuing redress. *Id.*

{¶29} In *Flowers v. Walker,* 63 Ohio St.3d 546, 589 N.E .2d 1284 (1992), the Ohio Supreme Court elaborated on the manner in which a cognizable event manifests. The court observed that "*constructive* knowledge of facts, rather than the *actual* knowledge of their significance, is enough to start the statute of limitations running under the discovery rule." *Id.* at 549. Consequently, the statute of limitations in a

medical malpractice case will be triggered even if a potential plaintiff has not uncovered all relevant facts to constitute her cause of action to trigger the running of the statute of limitations. *Id.* Thus, "[t]he occurrence of a cognizable event makes it incumbent upon that individual to investigate his or her case completely." *Hans v. The Ohio State Univ. Med. Ctr.,* 10th Dist. Franklin No. 07AP–10, 2007–Ohio–3294, ¶ 11, citing *Simonds v. Kearney,* 9th Dist. Wayne No. 01CA0035, 2002–Ohio–761.

**{¶30}** In the instant case, Appellant argues that the trial court erred in its determination of when the cognizable event occurred in this case.

**{¶31}** In determining when "the patient discovers or, with the exercise of reasonable care should have discovered, the resulting injury", the trial court must look to the facts of the case in order to find (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, (2) whether the injured party was aware, or should have been aware, that the condition was related to a specific medical service previously rendered him, and (3) whether the condition would put a reasonable person on notice of the need for further inquiry as to the cause of the condition. *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204.

**{¶32}** In determining the first prong of the *Hershberger* test regarding the injured party's awareness of the extent and seriousness of his condition, the court must find that a "cognizable event" occurred that put the party on notice that his injury is related to a specific medical procedure and of the need to pursue his possible remedies. *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. "[C]onstructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. A plaintiff need not have

discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.

**{¶33}** In the instant case, Appellant argues that the cognizable event did not occur until he read his discharge summary in January, 2009. Appellant asserts that was the first time he became aware that his medical providers claimed that they were unaware that Appellant was on the drug Florinef prior to surgery.

**{¶34}** As set forth above, a cause of action for medical malpractice accrues, and limitations period begins to run, either when patient discovers or, in the exercise of reasonable care and diligence should have discovered, resulting injury, or when physician-patient relationship for the condition terminates, whichever occurs later. R.C. § 2305.11.

**{¶35}** Here, Appellant developed an infection at the surgical site less than two weeks following his discharge from the hospital. This infection required re-hospitalization.

**{¶36}** Appellants in this case were aware of the involvement of Drs. Abbed, Borkowski, Lieberman and Huffman in his care and treatment. They consequently had actual knowledge of said doctors actions and had constructive knowledge of potential inactions. Appellants therefore could have, prior to the expiration of the statute of limitations, filed a malpractice action against said doctors and met the requirements of Civ.R. 10(D) by obtaining an extension, per the rule, in an effort to obtain facts necessary to support an affidavit of merit to support their allegations. We therefore conclude Appellants were obligated, pursuant to *Flowers,* to determine whether the care provide to Appellant by any or all of these doctors was sufficient to implicate them in a

malpractice suit. Appellants had the mechanisms available to file a legally sufficient complaint within the statutory period.

{¶37} Based on such, we hold that the cognizable event triggering the running of the statute of limitations in this case was Appellant's infection subsequent to his surgery and attendant re-hospitalization. The infection/re-hospitalization was a "noteworthy event" that should have alerted Appellants that possible malpractice had occurred. Appellants were therefore on notice, after the infection, to investigate the facts and circumstances of the malpractice claim in order to pursue their remedies against all potentially liable individuals who participated in his care, including these Appellees.

{¶38} Further, one year later, in October, 2007, Appellant retained an attorney to request and obtain his medical records relating to his surgery and subsequent re-hospitalization. Even assuming *arguendo* that we did not find Appellant's infection/re-hospitalization to be the cognizable event in this matter, we would find this to be the latest triggering event for the statute of limitations to begin to run. This would also be outside the applicable statute of limitations.

{¶39} Appellants' Second Assignment of Error is overruled.

III.

{¶40} In their Third Assignment of Error, Appellants argue that the trial court erred in finding that Appellants' claims against Drs. Jacobs, Keys, Schmitt and Jahan were time barred. We disagree.

{¶41} As to these doctors, Appellant maintains that the cognizable event occurred on December 10, 2010, when he received the opinion from his medical expert that his infection was related to the medical care he received at the Cleveland Clinic.

{¶42} Appellant cites *Akers v. Alonzo* (1992), 65 Ohio St.3d 422, in support of this position.  In *Akers*, the patient sought treatment with Dr. Alonzo, a urologist, who examined him, took several biopsies of his bladder, and eventually concluded that he showed no signs of cancer. Mr. Akers was then referred to a second urologist, Dr. Wise, who reviewed prior pathology slides and determined that he did have cancer. Approximately four years later, the Akers filed a medical malpractice action against Dr. Alonzo along with his oncologist. Akers subsequently learned from his medical expert that a Dr. de Lamerens had originally misinterpreted the slides as showing no cancer. One year after filing the complaint, Akers filed a second complaint that included a claim against Dr. de Lamerens. The trial court granted summary judgment in Dr. de Lamerens' favor concluding the cause of action was time-barred. The court of appeals reversed the trial court's judgment, holding there was evidence from which reasonable minds could draw the conclusion that Akers had no basis for suspecting that he had been initially misdiagnosed by Dr. de Lamerens until his identity was discovered; to wit, after the first lawsuit was initiated and the patient's expert re-read the slides discovering the purported error.

{¶43} The Supreme Court subsequently affirmed the appellate court's reversal. The Court found its ruling in *Flowers* was distinguishable from the facts before it. In *Flowers,* the patient was aware that other individuals were involved in the faulty interpretation of her mammogram, but she was unaware of their identities. The patient discovered, nearly eight months later, she had cancer. That discovery was the cognizable event giving rise to a duty to determine the identity of the potential tortfeasors. In *Akers,* however, there was nothing in the record indicating that the patient

knew or should have known that the pathology slides had been wrongly read. The cognizable event was when the patient discovered, through his expert, that the pathology slides had been misinterpreted by Dr. de Lamerens. The Court underscored that [w]hile *Flowers, supra,* holds that the occurrence of the cognizable event imposes a duty of inquiry on the plaintiff, it does not hold that the plaintiff has a duty to ascertain the cognizable event itself, especially in a situation such as here, where the patient had no way of knowing either that there had been another physician involved or that that other physician had made an incorrect diagnosis. *Akers, supra,* at 425–426.

{¶44} We find *Akers* to be distinguishable from the instant case. In *Akers* there was no prior cognizable event such as that present in the case *sub judice*. There was no infection/re-hospitalization to place the plaintiff on notice that potential malpractice had occurred. The plaintiff in *Akers* did not have the opportunity to obtain such knowledge until an expert witness reviewed her pathology slides. Accordingly, *Akers* does not support Appellant's proposition that the cognizable event occurred upon the identification and review by their expert witness.

{¶45} Additionally, in this case, the Appellants' attorney had possession of Appellant's medical records as early as October, 2007. At that time Appellants had the opportunity to obtain knowledge of the identity of Appellant's treating doctors and any alleged malpractice.

{¶46} The claims against these doctors were not filed until February 3, 2011, four years after Appellant's hospitalization for the infection. Two years had also elapsed since the date when Appellant claims to have cleaned his office and read his discharge

summary for the first time and three years had elapsed from the time Appellant had requested his medical records through counsel.

{¶47} Further, in addition to the statute of limitations having expired as to these four doctors, we also find that the statute of repose as set forth in R.C. §2305.113(C) had also expired.

{¶48} Appellants' Third Assignment of Error is overruled.

I.

{¶49} Appellants herein argue that the trial court erred in dismissing their claims against the Cleveland Clinic Foundation even if the statute of limitations had run as to all treating doctors. We disagree.

{¶50} In the instant case, Appellants' claims against the Cleveland Clinic Foundation are based on vicarious liability/respondeat superior.

{¶51} Appellants herein rely on the "termination rule" as set forth above, to argue that Waikem's patient-physician relationship with the Cleveland Clinic Foundation did not terminate until April 18, 2008. Appellants claim that Mr. Waikem continued to treat at the Cleveland Clinic for a condition related to the negligence alleged in this case until April 18, 2008, and that they served 180 day letters to the Cleveland Clinic on April 8, 2009.

{¶52} **Termination Rule**

{¶53} In *Clark v. Southview Hosp.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46, syllabus, the Supreme Court held:

> A hospital may be held liable under the doctrine of agency by
>
> estoppel for the negligence of independent medical practitioners practicing

in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. (*Albain v. Flower Hosp.* [1990], 50 Ohio St.3d 251, 553 N.E.2d 1038, paragraph four of the syllabus, overruled.)

**{¶54}** Subsequently, in *Comer v. Risko,* 106 Ohio St.3d 185, 833 N.E.2d 712, 2005-Ohio-4559, ¶ 27–28, the Supreme Court explained:

Agency by estoppel is not a direct claim against a hospital, but an indirect claim for the vicarious liability of an independent contractor with whom the hospital contracted for professional services. Furthermore, if the independent contractor is not and cannot be liable because of the expiration of the statute of limitations, no potential liability exists to flow through to the secondary party, i.e., the hospital, under an agency theory.

Therefore, we hold that agency by estoppel is a derivative claim of vicarious liability whereby the liability of the hospital must flow through the independent-contractor physician. Consequently, there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired.

**{¶55}** Appellants herein argue that the above cases are limited to principal/agent or agency by estoppels situations. Upon review, we find no real distinction. Here, Appellants' claims against the Cleveland Clinic Foundation are based upon the negligence of the individual employee doctors, which, as set forth above,

cannot be found liable because no medical malpractice claims were brought against them within the required statute of limitations period.

**{¶56}** We further find that Appellants' reliance on *Sawicki v. Lucas County Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, to be misplaced, in that in *Sawicki*, unlike here, Appellant's respondeat superior claim against the employer was timely filed.

**{¶57}**  In this case, we find that Appellants are trying to do indirectly that which they are barred from doing directly.

**{¶58}** The malpractice victim must pursue his remedies in a timely fashion or abandon them at his peril. *Powell v. Rion*, 2nd Dist. App. No. 24756, 2012-Ohio-2665

**{¶59}** Appellant's First Assignment of Error is overruled.

**{¶60}** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.


By: Wise, J.

Delaney, P. J., concurs in part and dissents in part.

Edwards, J., concurs.


_____

_____

_____

                                        JUDGES

JWW/d 1011

*Delaney, J., dissenting in part and concurring in part*

{¶61} I respectfully dissent from the majority opinion in regards to the disposition of Appellants' First Assignment of Error.

{¶62} The majority finds Appellants' claims against the Cleveland Clinic are barred because the statute of limitations has run against the individual employee doctors. The majority relies upon the Ohio Supreme Court's ruling in *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, in stating the "Appellants are trying to do indirectly that which they are barred from doing directly." I disagree and offer the following analysis of this assignment of error.

{¶63} At the outset, there are two facts which are undisputed by the parties: (1) the defendant doctors are or were, at all relevent times, employees of the Clinic, not independent contractors; and (2) Mr. Waikem continued medical treatment with the Clinic until April 18, 2008.

{¶64} In *Frysinger v. Leech*, *supra*, the Ohio Supreme Court held that a cause of action for medical malpractice accrues and the statute of limitations begins to run (1) when the patient discovers or, in the exercise of reasonable care and diligence, should have discovered the resulting injury, or (2) when the physician-patient relationship for that condition terminates, whichever occurs later.

{¶65} The termination rule applies to hospitals that have an ongoing relationship with the patient. *Amadasu v. O'Neal*, 176 Ohio App.3d 217, 2008-Ohio-1730, 891 N.E.2d 802, ¶ 13 (1st Dist.). Therefore, the second part of the *Frysinger* test applies as it did in *Amadasu*, and the cause of action against the Clinic accrued on April 18, 2008, the date Mr. Waikem alleged that the Clinic terminated treatment. It is also undisputed

that Appellants served a 180 day letter to the Clinic within one year of Mr. Waikem terminating treatment at the Clinic. Appellants filed their original lawsuit on October 5, 2009 within 180 days of serving the letter. The original lawsuit was dismissed without prejudice on February 3, 2010. Appellants refiled their action against the Clinic on February 3, 2011.

{¶66} Therefore, there is no dispute of material fact the lawsuit against the Clinic was timely filed. Nevertheless, the trial court held, and the majority herein agrees, that even though the Clinic continued to treat Mr. Waikem, the statute of limitations had expired against the Clinic because the statute of limitations had expired against all the individual employee doctors.

{¶67} I find persuasive the analysis of other appellate courts that have addressed the potential expansion of the Ohio Supreme Court's ruling in *Comer,* and subsequently in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, as to claims, including medical claim cases, where the negligent actors are "employees" of their business, as opposed to independent contractors, partners or co-owners of the entity.

{¶68} Although Appellees strenuously argue that "*Comer* applies with equal force to agents, employees, and to independent contractors," appellate courts across the state have refused to read *Comer* as broadly. *See*, *Taylor v. Belmont Community Hospital*, 7th Dist. No. 08CV98, 2010-Ohio-3986 (refusing to extend the narrow holding of *Wuerth* to situations other than those existing in that case and finding that traditional respondeat superior law applies to physician employed by hospital, noting that the Supreme Court also specifically warned *Comer* was a narrow holding); *Stanley v.*

*Community Hospital*, 2nd Dist. 2010-CA-53, 2011-Ohio-1290 (the holding in *Wuerth* must be given narrow application). *See also*, *Holland v. Bob Evans Farms*, 3rd Dist. No. 17-07-12, 2008-Ohio-1487 (*Comer* clearly distinguishable since an employer is in a different position than would be the principal who hired an independent contractor); *Orebaugh v. Wal-Mart Stores, Inc.*, 12th Dist. No. CA2006-08-185, 2007-Ohio-4969 (*Comer* limited to the narrow issue before it, whether "a viable claim exists against a hospital under a theory of agency by estoppels for the negligence of an independent-contractor physician when the physician cannot be made a party because the statute of limitations has expired.").

**{¶69}** I agree with Appellants the doctrine of respondent superior controls and permits suit to be filed against the employee, the employer, or both and there is no requirement that the employee be named as a party. *Losito v. Kruse*, 136 Ohio St. 183, 187, 24 N.E.2d 705 (1940). I am reluctant to expand and apply *Comer* and *Wuerth* to R.C. 2305.113(A) medical claims, including medical malpractice claims, where the individual doctors are involved in the traditional employer-employee relationship. *See also*, *Tisdale v. Toledo Hospital*, 197 Ohio App.3d 316, 2012-Ohio-1110, 967 N.E.2d 280 (6th Dist.) (*Wuerth* acknowledged and retained *Losito's* rule that the plaintiff can choose to sue the employer *or* the employee or both and *Comer* does not apply because agency by estoppel presupposes that the tortfeasor's relationship to the hospital is that of an independent contractor, not employee).

**{¶70}** Until the Ohio Supreme Court addresses the issue, I find the reasoning of the above-cited authorities to be persuasive under the facts of this case. Presumably, both Mr. Waikem and the Clinic benefitted from the long term patient-hospital

relationship that continued despite the post-surgical infection. Placing a patient in the position of suing an ongoing treatment provider and its employees seems contrary to common sense and good medicine.

{¶71} For these reasons, I would sustain the First Assignment of Error.

{¶72} I concur in the majority's disposition of the Second and Third Assignments of Error, finding the Appellants' claims are outside the statute of limitations as to the individual doctors, but disagree the infection/re-hospitalization of Mr. Waikem was a cognizable event triggering the accrual of the statute of limitations.

{¶73} Infection is a common risk of surgery and Mr. Waikem developed a MRSA infection at the surgical site causing complications and continued treatment at the Clinic. Construing this evidence in a light most favorable to Appellants as we must, I cannot say that the infection, by itself, should have put Appellants on notice that malpractice had occurred.

{¶74} However, in looking at the combination of infection and Mr. Waikem's request to his attorney to obtain his medical records in October 2007 and receipt thereafter, Appellants should have been put on notice that potential improper medical treatment had occurred.

{¶75} For these reasons, I would affirm the judgment of the trial court as to the individual employee doctors and reverse the judgment as to the Clinic.

_____
JUDGE PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


GEORGE E. WAIKEM, JR., et al.              :
                                           :
        Plaintiffs-Appellants              :
                                           :
-vs-                                       :        JUDGMENT ENTRY
                                           :
THE CLEVELAND CLINIC                       :
FOUNDATION, et al.                         :
                                           :
        Defendants-Appellees              :        Case No. 2011 CA 00234


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

        Costs assessed to Appellants.


                                    _____

                                    _____

                                    _____

                                              JUDGES