[Cite as *Lillie v. Meachem*, 2009-Ohio-4934.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

KENNETH D. LILLIE,

    PLAINTIFF-APPELLANT,
    CROSS-APPELLEE,
                                CASE NO.  1-09-09

    v.

DONALD L. MEACHEM, ET AL.,

                                      O P I N I O N
    DEFENDANTS-APPELLEES,
    CROSS-APPELLANTS.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV20060430**

**Judgment Reversed and Cause Remanded**

**Date of Decision:    September 21, 2009**

APPEARANCES:

    *Timothy D. Shimko*  for Appellant/Cross-Appellee

    *Eric Griebling*  for Appellant/Cross-Appellee

    *Bruce A. Curry* for Appellees/Cross-Appellants, Meachem & DLM
        Enterprises

    *David A. Patterson* for Appellee, Monarch Retail

**WILLAMOWSKI, J.**

{¶1} The plaintiff-appellant, Kenneth Lillie, appeals the judgment of the Allen County Common Pleas Court granting partial summary judgment in favor of the defendants-appellees, Donald Meachem and DLM Enterprise (collectively referred to as "DLM"). On appeal, Lillie contends that the trial court erred by granting summary judgment. Specifically, Lillie argues that the trial court erred by finding that DLM owed him no duty, by preventing him from using as evidence safety regulations and standards, and by striking the affidavit of his expert witness. DLM also appeals the judgment of the trial court, claiming that the trial court erred when it found that DLM had actively participated in Lillie's work activities. For the reasons set forth herein, the judgment of the trial court is reversed.

{¶2} On October 30, 2005, the C.J. Banks store was being constructed inside the Lima Mall in Lima, Ohio. Monarch Retail LLC was the general contractor, and DLM Enterprise, a sole proprietorship owned by Meachem, was the subcontractor. Lillie had been hired as a subcontractor by DLM to complete drywall work. On October 30, 2005, Lillie was instructed to perform taping and mudding work above the ceiling grid in the storage area of the store space. Lillie placed a closed step-ladder on top of scaffolding and leaned the ladder against the wall. As he climbed the ladder, Lillie fell approximately 10 to 14 feet to the

ground, breaking his ankle. The evidence is disputed as to who assembled the scaffolding and who was to provide instruction on the jobsite.

{¶3} The evidence is undisputed that the scaffolding Lillie had been using was defective. The wheels of the scaffolding were intended to swivel in different directions and to roll in order to move the scaffolding. One of the wheels on the scaffolding would not swivel. A different wheel had no locking mechanism. The record also contains evidence that none of the wheels that had locks were locked at the time Lillie was using the scaffolding.

{¶4} On May 1, 2006, Lillie filed a complaint against Meachem, DLM and Monarch asserting one claim of negligence, one claim of recklessness, and one claim of breach of contract. Monarch and DLM filed their answers. On August 11, 2006, with leave of court, Lillie filed a first amended complaint, adding Simon Property Group, Inc. as a defendant. DLM and Monarch filed their answers, and on December 26, 2006, Monarch filed a cross-claim against DLM. Simon answered Lillie's first amended complaint on January 3, 2007, and DLM answered Monarch's cross-claim on January 9, 2007.

{¶5} On February 16, 2007, Lillie voluntarily dismissed Simon from the litigation. With leave of the court, Lillie filed a second amended complaint on March 5, 2007, naming Christopher & Banks, Inc. as a defendant. DLM filed their answer to the second amended complaint on March 12, 2007 and filed a

motion for partial summary judgment on April 12, 2007. In its motion, DLM argued that Lillie had failed to present any evidence of duty or breach on his negligence claim. Christopher & Banks filed its answer to the second amended complaint on April 30, 2007. Monarch filed a memorandum contra partial summary judgment on May 4, 2007, arguing that DLM had owed a duty to Lillie and had breached their duty. Lillie filed his response in opposition to DLM's motion for summary judgment on May 24, 2007.

{¶6} On May 29, 2007, Christopher & Banks filed a motion for summary judgment. The trial court denied DLM's motion for partial summary judgment on June 5, 2007 and granted summary judgment to Christopher & Banks on August 3, 2007. On October 17, 2007, Monarch dismissed its cross-claim against DLM. Also on that date, DLM filed a motion in limine seeking to exclude any evidence of violations of safety regulations and standards and the contract between Monarch and DLM. Monarch also filed motions in limine to prevent Lillie from introducing evidence of safety regulation and standard violations and to prevent any testimony by Richard Harkness, Lillie's expert witness. The trial court granted the defendants' motions in limine on October 19, 2007, finding that the regulations promulgated by the Occupational Safety and Health Administration ("OSHA") do not provide private causes of action, and that Harkness was restricted from testifying about OSHA and other safety standards.

{¶7} Trial commenced on October 22, 2007; however the court declared a mistrial. On November 11, 2007, Lillie filed a written proffer of Harkness' testimony concerning common law elements of negligence. Monarch filed a motion to strike the proffer, and DLM objected to the proffer. On November 11, 2007, the trial court granted Monarch's motion to strike the proffer.

{¶8} On November 19, 2008, DLM filed a second motion for partial summary judgment. In its motion, DLM argued that Lillie was unable to prove that it owed him a duty, that it had breached a duty, or that any breach of its duty was the cause of Lillie's injuries. Lillie filed a response on January 2, 2009, and DLM filed its reply. On February 4, 2009, the trial court filed its judgment entry granting partial summary judgment to DLM. Since other parties and claims remained in the case, the court certified that there was no just reason for delay pursuant to Civ.R. 54(B); thus, invoking this court's jurisdiction for appellate review. *Chef Italiano* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64. Lillie appeals the judgment of the trial court, setting forth four assignments of error for our review.

### *Lillie's First Assignment of Error*

**The trial court erred in ruling as a matter of law that Plaintiff Appellant failed to present evidence to pursue a claim of negligence.**

*Lillie's Second Assignment of Error*

**The trial court erred in ruling as a matter of law that Plaintiff/Appellant failed to demonstrate that either Defendant owed a duty to the Plaintiff.**

*Lillie's Third Assignment of Error*

**The trial court erred in holding that evidence of OSHA Regulations and ANSI standards are not admissible to demonstrate the duties of the Defendants to the Plaintiff or to demonstrate the appropriate standard of care owed by the Defendants to the Plaintiff.**

*Lillie's Fourth Assignment of Error*

**The trial court erred in holding that Plaintiff's expert's affidavit submitted in opposition to Defendant's motion for summary judgment was inadmissible.**

{¶9} In its cross-appeal, DLM asserts one assignment of error.

*DLM's Assignment of Error*

**The trial court erred as a matter of law by concluding that Appellees [sic] actively participated in the critical acts that lead [sic] to Appellant's injury. Therefore, Appellees owed no duty to Appellant, an independent contractor.**

{¶10} Before reaching the merits of this case, we stress that our holding will affect only the claim of negligence filed by Lillie against DLM. Monarch did not move for summary judgment (and the trial court did not grant summary judgment to it), DLM did not request summary judgment on any other claim asserted in Lillie's complaint, and none of the defendants requested summary judgment on the issue of comparative negligence.

{¶11} For ease of analysis, we elect to address the assignments of error out of order. In Lillie's third assignment of error, he contends that the trial court erred by excluding evidence of OSHA regulations, and safety standards promulgated by the American National Standards Institute ("ANSI") and the Scaffolding, Shoring and Forming Institute ("SSFI"). In the fourth assignment of error, Lillie contends that the trial court erred by excluding the affidavit and deposition of his expert witness, Richard Harkness, who testified at length concerning OSHA, ANSI, and SSFI standards.

{¶12} Generally, the trial court's determination of a motion in limine may not be appealed, and counsel must object at trial to preserve evidentiary rulings for appellate review. *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 34.

> **A motion *in limine* is commonly used as a tentative, precautionary request to limit inquiry into a specific area until its admissibility is determined during trial. *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 357, 444 N.E.2d 1358, 1361; see, also, *State v. Grubb* (1986), 28 Ohio St.3d 199, 201-202, 28 OBR 285, 288, 503 N.E.2d 142, 145. As a tentative, interlocutory, precautionary ruling, " * * * finality does not attach when the motion is granted." *Id.* at 202, 28 OBR at 288, 503 N.E.2d at 145. "'By its very nature, * * * its grant cannot be error. It is not a ruling on evidence. It adds a procedural step prior to the offer of evidence.'" (Citations omitted.) *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 396, 473 N.E.2d 768, 787. As such, "'* * * the ruling [o]n a motion *in limine* does not preserve the record on appeal[;] * * * an appellate court need not review the propriety of such an order unless the claimed error is preserved by [a timely**

> **objection] * * * when the issue is actually reached [during the] * * * trial.'"** (Emphasis deleted and citation omitted.) *Grubb, supra,* **28 Ohio St.3d at 203, 28 OBR at 289, 503 N.E.2d at 146.**

*Dent v. Ford Motor Co.* (1992), 83 Ohio App.3d 283, 286, 614 N.E.2d 1074. See also *Gates*, at ¶ 34-35. However, where, as here, the motion in limine is merged into the final order granting summary judgment, an appellate court may address the trial court's decision. *Brown v. Mabe*, 170 Ohio App.3d 13, 2007-Ohio-90, 865 N.E.2d 934, at ¶ 6, citing R.C. 2505.03(A); *State v. French* (1995), 72 Ohio St.3d 446, 450, 650 N.E.2d 887; *Grover v. Bartsch,* 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, at ¶ 9; *Horner v. Toledo Hosp.* (1993), 94 Ohio App.3d 282, 289, 640 N.E.2d 857.

{¶13} "Trial courts have broad discretion in determining whether to admit or exclude evidence" and as such, their decisions will not be reversed absent an abuse of discretion. *Wasinski v. Bur. of Worker's Comp.*, 3d Dist. Nos. 3-08-14, 3-08-16, 2009-Ohio-2615, at ¶ 48, citing *Deskins v. Cunningham*, 3d Dist. No. 14-05-29, 2006-Ohio-2003, citing *Huffman v. Hair Surgeon, Inc.* (1984), 19 Ohio St.3d 83, 482 N.E.2d 1248; *State v. Osborn,* 3d Dist. No. 9-05-35, 2006-Ohio-1890, citing *State v. Bronlow,* 3d Dist. No. 1-02-95, 2003-Ohio-5757; *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 437, 735 N.E.2d 546. Additionally, Civ.R. 61 states as follows:

> **No error in either the admission or exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or**

> **for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.**

See also *In re Matthews*, 3d Dist. Nos. 9-07-28, 9-07-29, 9-07-34, 2008-Ohio-276. An "'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (internal citations omitted).

{¶14} In their motion in limine, DLM stated, "as between parties which [do] not bear an employer-employee relationship, alleged violations of OSHA standard are irrelevant, do not apply and do not create a private cause of action or standard of care for purposes of tort litigation." DLM cited the court to *Anderson v. Ruoff* (1995), 100 Ohio App.3d 601, 654 N.E.2d 449, and *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 303, 649 N.E.2d 1215, to support its proposition. Two days after DLM filed their motion and before Lillie had an opportunity to respond, the trial court excluded the evidence, finding that evidence of OSHA violations is "prejudicial, irrelevant, and hearsay." J. Entry, Oct. 19, 2007, citing *Abbott v. Jarrett Reclamation Services, Inc.* (1999), 132 Ohio App.3d 729, 726 N.E.2d 511, citing Rothstein, Occupational Safety and Health Law (4 Ed.1998) 561, Section 513.

{¶15} We find DLM's reliance on *Anderson* and *Hernandez* to be misplaced. *Anderson* did not present any type of employer-employee relationship between the parties. Instead, the plaintiff's decedent was a business invitee of the defendant and died as the result of injuries suffered on the defendant's property. When plaintiff sought to include evidence of the defendant's various OSHA violations, the appellate court found the OSHA violations to be inapplicable to the plaintiff's negligence case, stating that "OSHA standards relate only to employers and do not provide a private cause of action for third parties." *Anderson*, at 605, citing *State ex rel. Goodyear Tire & Rubber Co. v. Tracey* (1990), 66 Ohio App.3d 71, 76, 583 N.E.2d 426.

{¶16} In *Hernandez*, the court's holding was simple and concise: "a violation of OSHA does not constitute negligence *per se*." (Emphasis sic). *Hernandez*, at 304. The court explained that negligence per se "decreases the elements that a plaintiff must prove in a negligence action." Id., citing *Swoboda v. Brown* (1935), 129 Ohio St. 512, 196 N.E. 274, at paragraph four of the syllabus ("[t]he distinction between negligence and 'negligence *per se*' is the means and method of ascertainment. The former must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or

required."). *Hernandez* is distinguished from this case, and thus inapplicable, because Lillie did not, and has not, asserted a claim of negligence per se based on DLM's alleged OSHA violations.

{¶17} Likewise, the trial court's reliance on *Abbott* was misplaced. The evidence sought to be admitted in *Abbott* was an OSHA citation issued in January 1992 and a second OSHA citation issued in October 1992 following the death of plaintiff's decedent. The court determined that the January 1992 citation may have been relevant to show awareness that certain safety procedures were required; however, it was irrelevant in establishing a duty of care. *Abbott*, at 749. The court similarly held that the October 1992 OSHA citation did not help plaintiff in establishing a duty of care or active participation. Id. During trial, the OSHA investigator was prohibited from testifying about the OSHA citations; however, he was permitted to testify "as to the proper safety procedures and that the lack of safety procedures on October 29, 1992, violated industry standards." Id. Thus, *Abbott* only restricted the use of OSHA citations but not the use of the regulations themselves, as demonstrated by the topics covered by the investigator's testimony. Interestingly, the reasons why the January 1992 citation would have been considered relevant apply in this case as some evidence of the foreseeability of injury.

{¶18} In the matter before us, there is no dispute that OSHA did not investigate Lillie's fall, and thus, no citations were issued. Lillie has sought to introduce evidence that DLM had a duty to provide a safe work environment. In his response to DLM's motion for summary judgment, Lillie argued that DLM actively participated in his work activities, thus creating a duty of care. Lillie then relied upon Harkness' affidavit to introduce evidence of OSHA regulations and ANSI and SSFI standards to address the element of breach of duty. The standards and regulations Lillie wished to present to the court merely demonstrate how or why the scaffolding he was using, which had been provided by DLM, was unsafe and how or why using a ladder on top of a scaffolding was unsafe.

{¶19} In discussing building regulations, the Supreme Court of Ohio has held that the "*violation* of an administrative rule does not constitute negligence per se; however, such a *violation* of an administrative rule may be admissible as evidence of negligence." (Emphasis added). *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 568, 697 N.E.2d 198, citing *Stephens v. A-Able Rents Co.* (1995), 101 Ohio App.3d 20, 27-28, 654 N.E.2d 1315. Several appellate districts have cited *Chambers* for the proposition that an OSHA *violation* might present evidence of negligence. *Estate of Merrell v. M. Weingold & Co.*, 8th Dist. No. 88508, 2007-Ohio-3070, at ¶ 60, citing *Cross v. Hydracrete Pumping Co., Inc.* (1999), 133 Ohio App.3d 501, fn.1, 728 N.E.2d 1104; *Aldridge v. Reckart Equip.*

*Co.*, 4th Dist. No. 04CA17, 2006-Ohio-4964, at ¶ 83, citing *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571, 587-588, 666 N.E.2d 631; *Neil v. Shook* (Jan. 16, 1998), 2d Dist. No.16422. See generally *Harlan v. Universal Forest Prod., Inc.*, 12th Dist. No. CA2003-11-293, 2004-Ohio-3915, at ¶ 48; *Klein v. Brothers Masonry, Inc.*, 6th Dist. No. L-02-1080, 2003-Ohio-3098. Again, the evidence sought to be admitted in this case is not evidence of a regulatory violation, but of regulatory standards, which establish safety procedures to effectuate Congress' stated purpose "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources * * * ." Section 651(b), Title 29, U.S. Code. See also *Fields v. Talawanda Bd. of Educ.*, 12th Dist. No. CA2008-02-035, 2009-Ohio-431 (allowing evidence of OSHA *standards* to be used in negligence case against employee of school district). On this record, we hold that the trial court abused its discretion by granting DLM's motion in limine concerning evidence of OSHA regulations and the voluntary safety standards promulgated by ANSI and SSFI. Since Harkness' affidavit and deposition were based, in part, on his review and application of the above mentioned regulations and standards, the trial court likewise erred by granting DLM's motion in that regard.

{¶20} At oral argument, counsel for DLM argued that OSHA is inapplicable because, having no employees, DLM is not an "employer." This

argument was not raised in DLM's motion in limine, nor was it raised in its motion for summary judgment. Therefore, we will not consider that question for the first time on appeal. See *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.,* 3d Dist. No. 14-06-34, 2007-Ohio-4365, at ¶ 23 (citations omitted) (generally, new arguments may not be raised for the first time on appeal). Likewise, this opinion does not address the admissibility of OSHA violations in an intentional tort case. The third and fourth assignments of error are sustained.

{¶21} An appellate court reviews a trial court's summary judgment decision de novo, independently and without deference to the trial court's decision. *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate only "when the requirements of Civ.R. 56(C) are met." *Adkins v. Chief Supermarket,* 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus. In ruling on a motion

for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." Id., at ¶ 8, citing *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. *Jacobs,* at 7.

{¶22} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ.R. 56(C)." Id. at 115, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." *Dresher*, at 294.

{¶23} In their motion for summary judgment, DLM argued that they owed no duty to Lillie because Phil Brunet, an agent of Monarch, had removed Lillie from the task Meachem had assigned him to and told him to tape and mud the

walls above the ceiling grid. DLM also asserts that Brunet assembled the scaffolding for Lillie, and that he instructed Lillie to use the closed stepladder on top the scaffolding by leaning it against the wall. DLM relied on *Rockett v. Newark*, 169 Ohio App.3d 379, 2006-Ohio-5715, 863 N.E.2d 177, to support its argument. DLM also claimed that even if they did owe a duty to Lillie, he would be unable to prove breach. DLM contends that Meachem had discarded the faulty scaffolding; that somebody else brought the scaffolding back into the store for use; that Meachem did not erect the scaffolding; and that Meachem did not tell Lillie to use the ladder. Finally, DLM asserted that Lillie had been unable to identify the precise reason why he fell. DLM relied on Lillie's and Meachem's deposition testimony.

{¶24} In response to DLM's motion, Lillie argued that DLM did owe him a duty of care because they actively participated in his work activities. He asserted that Meachem had instructed him to take orders from Brunet on the jobsite. Lillie also asserted that Meachem was on the job doing drywall work. As to breach of duty, Lillie relied on the testimony of his expert witness, Richard Harkness. Lillie's responsive memorandum relied upon Harkness' affidavit, his own deposition, Brunet's deposition, and Meachem's deposition.

{¶25} "To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached

that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, at ¶ 10, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, at ¶ 21, citing *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. Whether a legal duty exists is a question of law. *Moeller v. Auglaize Erie Machine Co.*, 3d Dist. No. 2-08-10, 2009-Ohio-301, at ¶ 25, citing *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. "The existence of a legal duty is based upon whether the injury was foreseeable." Id., citing *Federal Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 174, 543 N.E.2d 769. "'The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.'" *Covucci v. Syroco, Inc.* (Apr. 6, 2001)*,* 6th Dist. No. L-00-1349, citing Menifee, at 77.

{¶26} Where the parties' relationship is that of contractor and independent contractor, we are mindful that an independent contractor is primarily responsible for its own protection. See *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 250, 512 N.E.2d 1165. Prior to 1983, the Supreme Court of Ohio held:

> **[w]here an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.**

*Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 108, 113 N.E.2d 629.

Construction work is inherently dangerous. *Bond v. Howard Corp.* (1995), 72

Ohio St.3d 332, 336, 650 N.E.2d 416.

{¶27} However, relying on Ohio's frequenter statute, R.C. 4101.01, et seq.,

and establishing an exception to *Wellman*, the court held that:

> **[o]ne who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.**

*Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 452 N.E.2d

326, at syllabus. "The court defined 'active participation' to mean 'that the

general contractor directed the activity which resulted in the injury and/or gave or

denied permission for the critical acts that led to the employee's injury, rather than

merely exercising a general supervisory role over the project.'" (Emphasis

deleted). *Bond*, at 337. The court later stated that "active participation giving rise

to a duty of care may be found to exist where a property owner either directs or

exercises control over the work activities of the independent contractor's

employees, or where the owner retains or exercises control over a critical variable

in the workplace." *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 643,

693 N.E.2d 233. Despite the distinction between control of the work area and the

work activities of the independent contractor, liability arises under either or both circumstances.  Id. at 639; 643.

{¶28}  In his deposition, Lillie testified that he had been hired by Meachem, but Meachem had instructed him to take orders from Brunet too.  Lillie, Kenneth, Dep., Apr. 12, 2007, at 23; 33.  Lillie stated that another subcontractor hired by Meachem, Greg Miley, was on the job more than anybody, and he also provided direction.  Id. at 24.  Lillie stated that Meachem would give advice or help when he was asked, then he was on the telephone.  Id. at 26.  However, there was also testimony that Meachem installed drywall on the job.  Id. at 64.  On the day he was injured, Lillie testified that Brunet told him to install ceiling tile in the sales area.  Id. at 35.  When he ran out of ceiling tile, Brunet instructed him to do drywall work.  Id. at 37.  Lillie borrowed an electrician's ladder and began taping and mudding in the storage area.  Id. at 35.  At some point, the electrician needed the ladder, so Brunet and the head painter set up the scaffolding for him.  Id. at 39; 40; 49; 55; 109.  Even on the scaffolding, Lillie would not have been able to reach the height he needed to reach, so Brunet told him to use a small stepladder on top of the scaffolding.  Id. at 39.  Lillie got on the scaffolding, and the head painter handed the ladder to Lillie.  Id. at 75.  Lillie leaned the ladder against the wall at Brunet's instruction because it was the only way to reach the work space.  Id. at 72; 75.  Lillie testified that he took two steps up the ladder and fell.  Id. at 76.

Lillie stated that he had never put a ladder on scaffolding before, but he had seen Miley do so, and Miley had been working with a ladder on top the scaffolding "all day." Id. at 64; 76. Lillie testified that he had previously moved scaffolding with Meachem and/or Miley riding on the top of it, and when he did so, he never had to release any locks on the wheels. Id. at 58-59. Lillie also stated that Meachem did not walk by while the ladder was on the scaffolding. Id. at 72.

{¶29} Philip Brunet testified that he was Monarch's project manager. Brunet, Philip, Dep., Oct. 19, 2007, at 10. He stated that he turned the C.J. Banks store project over to Meachem as a subcontractor and as the superintendant. Id. at 14. Brunet was essentially an "overseer" who helped to clean up and move things, but he did not engage in hands-on work. Id. at 25-26. Brunet denied seeing Lillie's fall, but stated that his only involvement was to move the scaffold, which belonged to Meachem, from the backroom to the work area. Id. at 29; 30; 31. Brunet testified that somebody instructed him to move the scaffolding "upfront," and he believed that person was Meachem. Id. at 32. He also believed that Meachem was involved in the assembly of the scaffolding. Id. at 34. Brunet could not recall any scaffolding being located outside of the building. Id. at 50. He also could not recall having had any conversation with Lillie other than general pleasantries. Id. at 42.

{¶30} Donald Meachem testified that he was the superintendant on the C.J. Banks store job, and both Lillie and Miley were subcontractors. Meachem, Donald, Dep., Apr. 12, 2007, at 12; 13-14. Meachem had taken two or three sets of scaffolding to the jobsite, and one of those sets had turned out to be "bad" so he placed it outside with the scrap steel. Id. at 17-18. The "bad" scaffolding had one wheel that did not turn, and there was one lock, which may have been on the wheel that would not turn, that "didn't seem to want to work." Id. at 19. When Meachem placed the scaffolding on the scrap pile, he removed the wheels. Id. at 21.

{¶31} On the day of Lillie's fall, Meachem instructed him to install ceiling tile. Id. at 22; 23. He admitted that he had instructed Lillie to take orders from Brunet as well. Id. at 28. Meachem did not see Lillie fall, but when he arrived to see what had happened, he noticed that the scaffolding was pushed away from the wall on an approximately 20-degree angle. Id. at 34. Meachem testified that the scaffolding was the same scaffolding he had previously discarded; however, he did not know how it had been returned to the jobsite, and he did not know who had assembled the scaffolding. Id. at 25-26; 27. Meachem admitted that he has used a ladder on scaffolding before, but he does not do it often because the practice is unsafe. Id. at 31-32. After Lillie's fall, Meachem removed the scaffolding from the premises but retained possession of it. Id. at 36.

{¶32} Because the motion for summary judgment was limited to the work activities immediately preceding Lillie's fall, we must isolate our review to that time frame. Although the existence of a legal duty is generally a question of law, in this case, there are genuine issues of material fact that prevent such determination. The evidence is undisputed that Lillie had been instructed to take orders from Brunet by Meachem. As stated above, Lillie testified that Brunet instructed him to do the taping and mudding work; that Brunet and the head painter assembled the scaffolding; and that Brunet instructed him to use the ladder against the wall. Brunet admitted that he moved pieces of scaffolding but stated that he believed Meachem had instructed him to move the scaffolding into the work area. Brunet's testimony also reveals that he had not given Lillie any instructions, as their interaction consisted of general conversation. Finally, Brunet believed that Meachem had assembled the scaffolding. Construing this record in favor of the non-movant, Lillie, we find a genuine issue of fact as to whether DLM actively participated in the "critical acts" that led to Lillie's injury. Lillie's second assignment of error is sustained, as is DLM's assignment of error on cross-appeal in which they argued that the trial court erred by finding active participation.

{¶33} As to breach of duty, DLM argued that it had no involvement in bringing the faulty scaffolding back into the work area, that Meachem had not

assembled the scaffold for Lillie to use, and that Meachem had not instructed

Lillie to use the ladder.    However, as we set forth above, there are issues of fact

concerning Meachem's involvement with the movement and assembly of the

scaffolding as asserted by Brunet and thus there are genuine issues of material fact

concerning breach of duty.

{¶34} Finally, as to causation, DLM argued in its motion for summary

judgment that Lillie was unable to specifically identify the cause of his fall.  In his

deposition, Lillie testified as follows:

> **Q:   So did you start climbing up on the ladder?**
> **A:   I took two steps up.**
> **Q:   And what happened then?**
> **A:   I looked at the sky, and it was – my leg was hurting.  It just happened that quick.**
> **Q:   Do you know what happened then?**
> **A:   I started sliding down the wall and fell, but I don't remember exactly what happened other than once I hit the ground, I looked up.**
> **Q:   All right.  So as far as how you actually got to the ground, what caused you to get to the ground, you don't know as you sit here today?**
> **A:   I just know everything just moved and slid and shot out of the way, and I laid on the ground with a broken leg.**
> **Q:   Okay.  What's 'everything just moved?'  What are you talking about?  Are you talking about the scaffold?**
> **A:   Yeah. * * ***
> **Q:   All right.  Did the scaffold move?  Do you know that?**
> **A:   I believe so.  I can't –**
> **Q:   I'm not asking what you believe.  Do you know if it actually moved, the scaffold?**
> **A:   Everything spun.  As far as – I can't remember, because I was on the ground in pain.  So as I was climbing up, the next thing I know I was on the ground.  It happened that quick.**

> **Q: All right. So if I'm – so as you sit here today, whether or not that scaffold moved, you don't know.**
> **A: When I was laying on the ground, to look, it wasn't in the same place where it was supposed to be.**

Lillie, Dep., at 76-78.

{¶35} A plaintiff must be able to identify the cause of a fall. *Mitchell v. White Castle Mgmt. Co.*, 10th Dist. No. 09AP-88, 2009-Ohio-3246, at ¶ 10, citing *Stamper v. Middletown Hosp. Assn.* (1989), 65 Ohio App.3d 65, 67-68, 582 N.E.2d 1040. See also *Cleveland Athletic Assn. Co. v. Bending* (1934), 129 Ohio St. 152, 194 N.E. 6. In *Lewin v. Luthern W. High School*, 8th Dist. No. 88635, 2007-Ohio-4041, at ¶ 15, the court stated:

> **"a plaintiff will be prevented from establishing negligence when he, either personally or with the use of outside witnesses, is unable to identify what caused the fall. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall. However, while a plaintiff must identify the cause of the fall,** *he does not have to know, for example, the oily substance on the ground is motor oil. Instead, it is sufficient that the plaintiff knows the oily substance is what caused his fall.*** (Emphasis added.)** *Beck v. Camden Place at Tuttle Crossing,* **Franklin App. No. 02AP-1370, 2004-Ohio-2989. (Internal citations omitted.)**

(Emphasis sic.).

{¶36} In *Koop v. Speedway SuperAmerica, LLC*, 12th Dist. No. CA2008-09-110, 2009-Ohio-1734, the plaintiff fell inside one of defendant's stores. There was evidence that an employee had mopped up a coffee spill shortly before the plaintiff fell; however, the plaintiff "did not know then, or even now, what caused

her to slip and fall that morning." *Koop*, at ¶ 18. Plaintiff relied upon the former store manager's testimony concerning the dampness left on the floor following the employee's cleaning of the coffee spill, thus inviting the finder of fact to infer that the dampness was the cause of the plaintiff's fall. Id. at ¶ 19. However, the court rejected the plaintiff's evidence and held that "'[s]peculation or conjecture * * * [as to] what caused the fall is not sufficient to establish the premises owner's liability as a matter of law, because the issue of proximate cause is not open to speculation * * * .'" Id. at ¶ 34, quoting *Scott v. Kings Island Co.* (Feb. 16, 1999), 12th Dist. No. CA98-04-044, at 6-7. However, in this case, there is evidence in the record as to the cause of Lillie's fall.

{¶37} The facts in this case are undisputed that there were no witnesses to Lillie's fall other than Lillie himself. In his deposition, Lillie established that he generally knew why he fell. He had climbed onto the ladder and then slid down the wall as everything slid and "shot out" of the way. Lillie's testimony cannot establish whether the feet of the ladder slipped on the platform of the scaffolding, whether the ladder simply fell, or whether the scaffolding moved and caused the ladder to slip. However, he introduced Harkness' affidavit to show the specific causation.

{¶38} Harkness, a mechanical engineer, stated that he had experience in "the supervision of construction activities including the responsibility for safe

practices and the use of appropriate safeguards by construction workers." Pl.'s Response in Opp. to Def.'s Mot. for Summ. J., May 24, 2007, at Ex. 3, ¶ 4. Harkness had reviewed the complaint, the motion for summary judgment, the contract between Monarch and DLM, and the depositions of Meachem, Brunet, and Lillie. Id. at Ex. 3, ¶ 8. Harkness physically inspected the scaffolding and found that one of the wheels did not lock and another wheel did not swivel. Id. at Ex. 3, ¶ 18. Harkness opined, based on his education, training, experience, and facts, that "when Mr. Lillie climbed the two steps, the weight of his body transmitted a horizontal component of force through the feet of the ladder to the platform of the scaffold. This caused the scaffold to rotate counter-clockwise about the defective caster which did not swivel. The two casters on the other end piece were not locked. The caster on the defective end piece had no lock." Id. at Ex. 3, ¶ 17. Harkness also opined that DLM's failure to provide any safety training and their having faulty equipment on the jobsite was a proximate cause of Lillie's injury. Id. at Ex. 3, ¶ 30.

{¶39} Accordingly, there is evidence in the record to establish the proximate cause of Lillie's fall. Because genuine issues of material fact exist as to each element of Lillie's negligence claim against DLM and Meachem, the trial court erred by granting partial summary judgment. The first and second

assignments of error are sustained. DLM's assignment of error alleged in the cross-appeal is overruled.

{¶40} The judgment of the Allen County Common Pleas Court is reversed, and this cause is remanded for further proceedings.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J., and SHAW, J., concur.**

**/jlr**